**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**DENNIS HARRY SHERMAN, JR.,**

     **Plaintiff,**

                              **Case No. 3:19-cv-5530**
  **v.**                          **Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

     **Defendant.**

**<u>OPINION AND ORDER</u>**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Dennis Harry Sherman for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

On May 5, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since June 19, 2009. R. 174, 262–63, 388–406. Plaintiff's applications were denied initially and upon reconsideration. R. 226–305. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 328–30.

1

Administrative Law Judge George Michael Gaffaney ("ALJ") held a video hearing on September 13, 2017, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 191–225. In a decision dated January 17, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 19, 2009, his alleged disability onset date, through the date of that decision. R. 184. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on December 14, 2018. R. 9–15. In denying review, the Appeals Council specifically noted that Plaintiff had submitted additional medical evidence, advising as follows:

> You submitted medical records from Princeton Healthcare System dated February 14, 2018 to May 7, 2018 (41 pages), medical records from Princeton Healthcare System dated February 14, 2018 to May 7, 2018 (21 pages), medical records from Princeton Healthcare System dated February 14, 2018 to May 7, 2018 (36 pages), medical records from Princeton Health Care System dated March 2, 2018 (26 pages), and medical records from Khaja Faisal, M.D. dated March 14, 2018 (5 pages). The Administrative Law Judge decided your case through January 17, 2017. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 17, 2018.

> If you want us to consider whether you were disabled after January 17, 2018, you need to apply again. If you file a new claim for supplemental security income within 60 days after you receive this letter, we can use March 9, 2018, the date of your request for review, as the date of your new claim. The date you file a new claim can make a difference in the amount of benefits we can pay.

> You have the right to file a new application at any time, but filing a new application is not the same as filing a civil action. If you disagree with our action and file a new application instead of filing a civil action, you might lose some benefits or not qualify for any benefits. So, if you disagree with our action, you should file a civil action within 60 days as described below.

R. 10.

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 24, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

2

Procedure. ECF Nos. 14, 15.[1] On September 24, 2020, the case was reassigned to the undersigned. ECF No. 16. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the

---

[1] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not

6

have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 32 years old on his alleged disability onset date. R. 183.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 176.

At step two, the ALJ found that Plaintiff suffers from the following severe impairments: status post right ulnar surgery, depression, anxiety, degenerative joint disease of the right knee, and degenerative disc disease. *Id*. The ALJ also found that Plaintiff's diagnosed conditions of an ulcer and status post two left knee surgeries were not severe impairments. *Id*. The ALJ further found that Plaintiff's past alcohol abuse was not material to the determination. R. 177.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that meets or medically equals the severity of any Listing. R. 177–78.

At step four, the ALJ found that Plaintiff has the RFC to perform sedentary work subject to various additional limitations. R. 178. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a chef and cook. R. 183.

At step five, the ALJ found that a significant number of jobs—*i.e*., approximately 180,00 jobs as an assembler; approximately 140,000 jobs as a weight tester; approximately 85,000 jobs as an addresser— performed by an individual with Plaintiff's vocational profile and RFC. R. 184. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 19, 2009, his alleged disability onset date, through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at steps two, three, four, and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 18. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 19.

8

## IV.    DISCUSSION

### A.    Step Two

Plaintiff first contends that the ALJ's decision that he "does not suffer from a severe mental health disorder is contrary to the substantial credible evidence in the record[,]" apparently challenging the ALJ's determination at step two of the sequential evaluation. *Plaintiff's Brief*, ECF No. 18, pp. 8–9. Plaintiff's argument is not well taken. As a preliminary matter, Plaintiff misstates the applicable standard of review, which is whether substantial evidence supports the ALJ's decision. *See* 42 U.S.C. §§ 405(g) & 1383(c)(3); *see also Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (stating that the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied") (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)).

In addition, Plaintiff is mistaken that the ALJ found that Plaintiff does not suffer a severe mental impairment. At step two, the ALJ concluded that Plaintiff suffered from several severe impairments, including depression and anxiety. R. 176. To the extent that Plaintiff intends to argue that the ALJ should have included additional mental impairments as severe impairments at step two, that argument is unavailing. "So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct.

9

14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding."). Here, the ALJ found Plaintiff had several severe impairments at step two, including the mental impairments of depression and anxiety, and went on to consider Plaintiff's mental impairments throughout the remainder of the five-step sequential evaluation. *See* R. 177–83. Accordingly, even if the ALJ erred by not finding other severe impairments, whether physical or mental, any such error at step two is harmless based on this record. *See Salles*, 229 F. App'x at 145 n.2; *Hicks*, 2016 WL 8674251, at *8; *Auriemma*, 2015 WL 5097902, at *6.

### B.     Step Three

At step three of the sequential evaluation, the ALJ considered whether Plaintiff's mental impairments met or equaled Listings 12.04, which addresses depressive, bipolar and related disorders, and 12.06, which addresses anxiety and obsessive-compulsive disorders. Plaintiff complains that the ALJ did not evaluate Plaintiff's mental impairments by reference to the proper Listings. *Plaintiff's Brief*, ECF No. 18, pp. 10–11. Plaintiff specifically contends that the ALJ should have considered and found that his mental impairments meet or medically equal Listings 12.02 and 12.03, which address neurocognitive disorders and schizophrenia spectrum and other psychotic disorders, respectively. *Id.* Plaintiff's complaint is not well taken.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of any of the impairments in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364

F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

At the time of the ALJ's decision, Listing 12.04 addressed depressive, bipolar and related disorders and is satisfied by meeting the criteria of paragraphs A and B or the criteria of paragraphs A and C:

A. Medical documentation of the requirements of paragraph 1 or 2:

1. Depressive disorder, characterized by five or more of the following:
a. Depressed mood;
b. Diminished interest in almost all activities;
c. Appetite disturbance with change in weight;
d. Sleep disturbance;
e. Observable psychomotor agitation or retardation;
f. Decreased energy;
g. Feelings of guilt or worthlessness;
h. Difficulty concentrating or thinking; or
i. Thoughts of death or suicide.

2. Bipolar disorder, characterized by three or more of the following:
a. Pressured speech;
b. Flight of ideas;
c. Inflated self-esteem;
d. Decreased need for sleep;
e. Distractibility;
f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04 (2018). Similarly, at the time of the ALJ's

decision, Listing 12.06 addressed anxiety and obsessive-compulsive disorders and is satisfied by

meeting the criteria of paragraphs A and B or the criteria of paragraphs A and C. *Id*. at § 12.06.

Paragraphs B and C of Listing 12.06 are identical to paragraphs B and C of Listing 12.04 and

paragraph A of Listing 12.06 provides as follows:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

12

1. Anxiety disorder, characterized by three or more of the following;
a. Restlessness;
b. Easily fatigued;
c. Difficulty concentrating;
d. Irritability;
e. Muscle tension; or
f. Sleep disturbance.

2. Panic disorder or agoraphobia, characterized by one or both:
a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).

3. Obsessive-compulsive disorder, characterized by one or both:
a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or
b. Repetitive behaviors aimed at reducing anxiety.

*Id.*

Here, the ALJ determined at step two that Plaintiff's severe impairments consisted of, *inter alia*, depression and anxiety. R. 176. At step three, the ALJ found that these conditions did not meet or medically equal Listings 12.04 and 12.06. R. 177–78. In so finding, the ALJ specifically concluded that Plaintiff did not meet the criteria for paragraphs B or C of these Listings, reasoning as follows:

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

In understanding, remembering, or applying information, the claimant has a mild limitation. The claimant testified that he has memory problems and forgets what he is doing. However, he testified that he watches television and reads. Consultative

13

Examiner Pradip Gupta, M.D., observed that the claimant's speech was goal oriented, coherent, and relevant (ex. 9F/3). His short-term, intermittent, and long-term memory were intact (ex. 9F/3). He was able to recall 3 out of 3 items in three minutes and in five minutes (ex. 9F/3). He was able to spell "world" forward and backward (ex. 9F/3). He could do simple calculations (ex. 9F/3).

In interacting with others, the claimant has a mild limitation. The claimant testified that he has trouble being around people and spends time at home. He has testified to having horrible mood swings and crying. He testified that he is driven by his mother, takes Uber, or takes public transportation if someone accompanies him (ex. hearing testimony). The record demonstrates that he was cooperative (ex. 5F/4; 12F/7; 25F/l). He was calm (ex. 5F/4; 12F/7). His thought process was intact and logical (ex. 5F/4; 12F/7). His speech was normal (ex. 5F/4). He was alert and oriented (ex. 5F/4; 12F/7).

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant testified that he has trouble concentrating. Consultative Examiner Pradip Gupta, M.D., observed that the claimant's ability to recall past events was fair (ex. 9F/3). He had difficulty doing serial sevens and threes (ex. 9F/3). However, the claimant's speech was goal oriented, coherent, and relevant (ex. 9F/3). He was alert and oriented (ex. 9F/3). His short-term, intermittent, and long-term memory were intact (ex. 9F/3). He was able to recall 3 out of 3 items in three minutes and in five minutes (ex. 9F/3). He was able to spell "world" forward and backward (ex. 9F/3). He could do simple calculations (ex. 9F/3).

As for adapting or managing oneself the claimant has experienced no limitation. He testified that his activities of daily living include sitting on the couch or on the porch if no one is around, watching television, participating in fantasy football, and reading. He is able to take of his personal hygiene (ex. hearing testimony). He does the laundry, sweeps, and goes to the grocery store if someone accompanies him (ex. hearing testimony). He testified that he uses a cell phone to listen to music, for phone calls from his wife and daughter, and texting his family. The claimant is driven by his mother, takes Uber, or takes public transportation if someone accompanies him (ex. hearing testimony).

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

In this case, the evidence fails to establish the presence of the "paragraph C" criteria. 12.04 (C) and 12.06 (C) require that the mental disorder is "serious and persistent;" which means that you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and 2. Marginal adjustment, that is,

14

you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

The claimant's mental health treatment is discussed below. He testified that his activities of daily living include sitting on the couch or on the porch if no one is around, watching television, participating in fantasy football, and reading. He is able to take of his personal hygiene (ex. hearing testimony). He does the laundry, sweeps, and goes to the grocery store if someone accompanies him (ex. hearing testimony). He testified that he uses a cell phone to listen to music, for phone calls from his wife and daughter, and texting his family. The claimant is driven by his mother, takes Uber, or takes public transportation if someone accompanies him (ex. hearing testimony). The record demonstrates that he was cooperative (ex. 5F/4; 12F/7; 25F/1). He was calm (ex. 5F/4; 12F/7). His thought process was intact and logical (ex. 5F/4; 12F/7). His speech was normal (ex. 5F/4). He was alert and oriented (ex. 5F/4; 12F/7).

*Id.* At step four, the ALJ went on to note that Plaintiff's mental health treatment was infrequent,

detailing the treatment as follows:

The record demonstrates that the claimant's mental health treatment was infrequent. While the claimant's alleged onset date is June 19, 2009, the record reveals that the claimant's treatment with Greater Trenton Behavioral Healthcare began on May 20, 2014, when he presented for evaluation and treatment (ex. SF/2; duplicate 8F/3). The claimant was advised to follow-up in two to three weeks to assess the medications he was prescribed (ex. 5F/5). The next treatment note from Greater Trenton Behavioral Healthcare is dated March 4, 2015 (ex. 12F/5; duplicate 13F/8). The treatment notes report a lapse in treatment and that the claimant had been seen only from May 2014 through August 2014 (ex. 12F/5). The claimant reported that he had been receiving medications from his primary care physician (ex. 12F/5); however, one-on-one therapy and medication management were recommended (ex. 12F/8). There are no additional treatment notes from Greater Trenton Behavioral Healthcare. The claimant was also seen at Manasa Health Center, LLC on April 5, 2017, after a four-year interval (ex. 25F/1). He reported being off his medication for almost four weeks (ex. 25F/1). The claimant was advised to return in two weeks (ex. 2F/2). The next treatment note from Manasa Health Center, LLC is dated September 26, 2017 (ex. 25F/3). Thus, the reliability of the claimant's allegations regarding his mental symptoms are diminished due to the lack of support in the underlying evidence.

R. 180. The ALJ also considered opinion evidence relating to Plaintiff's mental impairments,

noting, *inter alia*, as follows:

On November 25, 2014, state agency physician Robert H. Blum, Ph.D., opined that the claimant had a moderate limitation in his ability to carry out detailed

instructions and maintain attention and concentration for extended periods (ex. 1A/14-15; 2A/14-15). The doctor is familiar with the Social Security disability program and is a specialist in mental health. The doctor's opinion aligns with the preponderance of record evidence. For example, the record demonstrated that he was cooperative (ex. 5F/4; 12F/7; 25F/1). He was calm (ex. 5F/4; 12F/7). His thought process was intact and logical (ex. 5F/4; 12F/7). His speech was normal (ex. 5F/4). He was alert and oriented (ex. 5F/4; l2F/7). In addition, Consultative Examiner Pradip Gupta, M.D., observed that the claimant's ability to recall past events was fair (ex. 9F/3). He had difficulty do[i]ng serial sevens and threes (ex. 9F/3). Therefore, the opinion is given great weight .

On July 14, 2015, state agency physician Robert Starace, Ph.D., opined that the claimant had mild limitations in activities of daily living and social functioning, moderate limitation in concentration, persistence or pace, and no repeated episodes of decompensation (ex. 5A/11; 6A/11). Dr. Starace also opined that the claimant had a moderate limitation in his ability to carry out detailed instructions and maintain attention and concentration for extended periods (ex. 5A/16-17; 6A/16-17). The doctor is familiar with the Social Security disability program and is a specialist in mental health. The doctor's opinion aligns with the preponderance of record evidence. For example, the record demonstrated that he was cooperative (ex. 5F/4; 12F/7; 25F/l). He was calm (ex. 5F/4; 12F/7). His thought process was intact and logical (ex. 5F/4; 12F/7). His speech was normal (ex. 5F/4). He was alert and oriented (ex. 5F/4; 12F/7). In addition, Consultative Examiner Pradip Gupta, M.D., observed that the claimant's ability to recall past events was fair (ex. 9F/3). He had difficulty do[i]ng serial sevens and threes (ex. 9F/3). Therefore, the opinion is given great weight. . . .

R. 181–82. In short, considering this record before the ALJ as a whole, substantial evidence supports the ALJ's finding that Plaintiff's mental impairments did not meet or medically equal Listings 12.04 and 12.06. *See Sullivan*, 493 U.S. at 531; *Jones,* 364 F.3d at 504–05.

Plaintiff does not appear to challenge this finding, arguing instead that the ALJ should have found that Plaintiff's mental impairments met or medically equaled Listings 12.02 and 12.03 *Plaintiff's Brief*, ECF No. 18, pp. 10–11 (contending that he meets, *inter alia*, Listing 12.02B2, 3 (addressing ability to interact with others and ability to concentrate, persist, or maintain pace) and Listing 12.03B3 (addressing ability to interact with others)). Plaintiff's argument is not well taken.

16

At the time of the ALJ's decision, Listings 12.02 and 12.03 addressed neurocognitive disorders and schizophrenia spectrum and other psychotic disorders, respectively. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.02, 12.03 (2018). Paragraphs B and C of Listings 12.02 and 12.03 are identical to those in Listings 12.04 and 12.06. *Compare* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.02 and 12.03 *with id.* at §§ 12.04 and 12.06; *see also Thomas v. Comm'r of Soc. Sec.*, No. 2:14-0627, 2015 WL 5921515, at *6–7 (D.N.J. Oct. 9, 2015) (noting that the criteria of paragraphs B and C of Listings 12.03 and 12.04 are identical and that "[t]he ALJ's finding that the criteria of Listing 12.04 were not satisfied would necessitate a similar finding as to Listing 12.03"). The ALJ's analysis of the criteria of paragraphs B and C in Listings 12.04 and 12.06 would therefore apply equally to an analysis of those paragraphs in Listings 12.02 and 12.03. *Id.* Notably, Plaintiff does not dispute the record before the ALJ, nor does he argue that the record before the ALJ requires a finding of greater limitation of function. *See Plaintiff's Brief*, ECF No. 18, pp. 10–11. Accordingly, any error made by the ALJ in failing to address the criteria of Listings 12.02 and 12.03 in addition to those of Listings 12.04 and 12.06 was harmless. *See Jones*, 364 F.3d at 505; *Thomas*, 2015 WL 5921515, at *6–7; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm.").

Plaintiff, however, insists that he meets the criteria for Listings 12.02 and 12.03 and goes on to rely on medical records that were not before the ALJ and which post-date the ALJ's decision:

> In describing the extent of his psychosis in a medical history taken at Princeton Behavioral Health less than a month after [the] decision in this case was reached, he states that he was severely depressed over the last 10 years as well as having auditory hallucinations which were derogatory and commanding him to kill

17

> himself. Those hallucinations lasted for the previous five years. He also documented his mood swings with frequent anger and irritability, outbursts and severe depression with anxiety.

*Plaintiff's Brief*, ECF No. 18, p. 11 (citing R. 104−05 (reflecting medical records from Princeton Healthcare System dated March 5, 2018)).

However, Plaintiff does not ask for remand, pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of new and material evidence. *See generally Plaintiff's Brief*, ECF No. 18. In addition, as set forth above, the Appeals Council explained to Plaintiff, when he submitted these records along with other records that post-dated the ALJ's decision, that "[t]his additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 17, 2018." R. 4 (advising further that Plaintiff could file a new application if he sought consideration of this information). Notably, Plaintiff has not contended that the Appeals Council committed a procedural error or explained how any such error was not harmless. *See generally Plaintiff's Brief*, ECF No. 18. Accordingly, where Plaintiff has failed to explain how any procedural error on the part of the Appeals Council in this regard harmed him, and has failed to even request a sentence six remand, the Court finds that remand is not warranted. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553.

Plaintiff goes on to argue that the opinion of his treating physician, Shadid Meer, M.D., that Plaintiff is not able to engage in gainful employment, should be given controlling weight and apparently supports Plaintiff's position that he meets or medically equals a listed impairment. *Plaintiff's Brief*, ECF No. 18, p. 11.[2] Plaintiff's argument is not well taken. The ALJ specifically considered Dr. Meer's opinion in this regard, reasoning as follows:

> On February 26, 2015, Shadid Meer, M.D., checked the no box that asked whether

---

[2] In making this argument, Plaintiff cites to "Page 182," *see id*., but the medical questionnaire dated February 26, 2015, reflecting this opinion of Dr. Meer appears on R. 1320.

the claimant was able to engage in any gainful employment and/or occupational training of any kind (ex. 20F/44). The final responsibility for deciding whether the claimant is "disabled" under the Social Security Act is reserved to the Commissioner. Therefore, no weight is given to this opinion.

R. 182. The Court finds no error with the ALJ's assessment in this regard. *See Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner.").[3]

For all these reasons, the Court concludes that the ALJ's finding at step three that Plaintiff does not meet or medically equal a listed impairment enjoys substantial support in the record.

### C.    Steps Four and Five

Finally, Plaintiff suggests that the RFC determination is not supported by substantial evidence and argues that testimony by the vocational expert supports a finding of disability. *Plaintiff's Brief*, ECF No. 18, pp. 11–12. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, an ALJ is charged

---

[3] In any event, the Court notes that Dr. Meer does not attribute Plaintiff's alleged inability to work to limitations related to any mental impairment.  In response to the question how diagnoses limit Plaintiff, Meer simply writes, "Back pain[.]" R. 1320. Notably, Plaintiff has not challenged the ALJ's consideration of his physical impairments, which is supported by substantial evidence. R. 176–183. Dr. Meer's opinion that Plaintiff's back pain is disabling is therefore irrelevant to Plaintiff's step three arguments that his mental impairments meet or medically equal a listed impairment.

with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform sedentary work with certain additional limitations as follows:

> The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) meaning he could lift 10 pounds occasionally, 5 pounds frequently, stand for 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. He could occasionally climb stairs, stoop, balance, kneel, crouch, crawl, and climb ladders. He could have occasional exposure to extreme cold. He could have occasional exposure to wetness. He could do simple, routine tasks (unskilled) with occasional change in a routine work setting. He could have occasional interaction with the public.

R. 178−79. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, a largely normal physical functional capacity; treatment notes regarding his back that he was feeling better and doing well, that the chronic back pain was tolerable with current medications, that his ambulation improved with control of pain; no physical therapy treatment notes from the years 2012 and 2014 despite referrals to such treatment; treatment notes reflecting

that Plaintiff was cooperative, calm, had intact and logical thought processes, normal speech, denied homicidal or suicidal ideation, euthymic mood, with goal-oriented, coherent, and relevant speech; infrequent mental health treatment; the medical evidence outweighed Plaintiff's allegations of very limited daily activities; and medical opinion evidence that reflected only mild or moderate limitations. R. 179–83. The record before the ALJ unquestionably contains substantial evidence to support this RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

At the hearing, the ALJ posed to the vocational expert a hypothetical question that assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 178, 219–20. The vocational expert responded that the jobs of assembler, weight tester, and addresser would be appropriate for such a claimant. R. 220. The ALJ relied on this testimony when finding that there existed jobs in significant numbers in the national economy that Plaintiff could perform. R. 183–84. This hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218.

In attacking the ALJ's findings in this regard, Plaintiff argues that "[w]hen the vocational expert was cross-examined and asked to take into account the petitioner's testimony of mood swings, isolation, withdrawal, failure to interact with others, and his physical disability, she admitted that he could not engage in any of the employments that she found would be available to him." *Plaintiff's Brief*, ECF No. 18, p. 11. Plaintiff's contention and this testimony do not require remand.

"While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational

expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632,

634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's

impairments, the ALJ must include all 'credibly established limitations' in the hypothetical.

*Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations

are limitations "that are medically supported and otherwise uncontroverted in the record."

*Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted

by other evidence in the record may or may not be found credible—the ALJ can choose to credit

portions of the existing evidence but cannot reject evidence for no reason or for the wrong

reason." *Id*. (citations and internal quotation marks omitted). Finally, a vocational expert's

testimony concerning a claimant's ability to perform alternative employment may be considered

for purposes of determining disability "if the [ALJ's hypothetical] question accurately portrays

the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218.

   Here, Plaintiff's counsel posed to the vocational expert a different hypothetical question

that included greater limitations of function than those found by the ALJ. R. 221–22. The

vocational expert responded that she did not believe that, under those circumstances, competitive

employment would be possible. *Id*. However, the fact that Plaintiff's attorney presented a

hypothetical question with greater limitations is irrelevant where the ALJ's RFC is supported by

substantial evidence and the hypothetical relied upon by the ALJ sufficiently captured Plaintiff's

credibly established limitations. *Cf. Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218.

To the extent that Plaintiff's criticism of the hypothetical questions to the vocational expert is

that all his alleged impairments were not addressed, this criticism boils down to an attack on the

RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already

found enjoys substantial support in the record for the reasons previously discussed. Moreover, a

"hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (citation omitted). Accordingly, the ALJ did not err in not relying on the vocational expert's testimony in response to Plaintiff's counsel's hypothetical question when finding that Plaintiff was not disabled. *Id.*; *see also Smith*, 631 F.3d at 634; *Rutherford*, 399 F.3d at 554; *cf. Harris v. Comm'r of Soc. Sec.*, No. CV 17-3964, 2018 WL 5801546, at *3 (D.N.J. Nov. 5, 2018) ("While the vocational expert testified in response to a hypothetical posed by Plaintiff's counsel— that a person who is occasionally unable to respond appropriately to supervisors would indeed be unemployable—there is no evidence in the record to support Plaintiff's contention that there are times in the day that she would be wholly unable to interact with supervisors in an appropriate manner, or that Plaintiff would engage in frequent or occasional inappropriate conduct in dealing with them.").

## V.      CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  December 3, 2020                           *s/Norah McCann King*
                                                  NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE